Curia, per

Butler, J.
By the Acts of 1817 and 1833, a prisoner confined for debt is required both to make an assignment, and to deliver to the assignee the effects contained in his schedule, before the plaintiff can be required at all to pay his jail fees. After assignment and delivery, the plaintiff in execution or mesne process may be required to pay for the subsistence of the prisoner, provided the as-signee has not enough to satisfy the same, and the prisoner himself is unable or refuses to pay, <fec. In the case before the court, the prisoner, Evans, has not complied with the requisitions of these Acts. In the first instance, it is probable that he wilfully refused to comply with the provisions, and it may be now that he is unable to do so. It must be remarked, [however, that he has reduced himself to his present situation by his own contumacy, arising, perhaps, out of a deliberate design to deprive the defendants of the benefit of their recovery against him. The case of Bryant vs. Ellis, Dudley, 71, involved the question, whether, under the then existing Acts, the sheriff was entitled to recover of a plaintiff who had lodged process against the same prisoner whose case is now before the court, the amount of his jail fees. The judgment of the court, for the entirely satisfactory reasons assigned in it, was against the demand of the sheriff. As far as we are informed, the situation of Evans, since that time, has been in no wise changed; that is, he has neither made an assignment or surrendered his property ; and but for the Act of 1839, it is conceded the sheriff would be without remedy. The sheriff’s right to recover in this action depends entirely on the construction of the last Act referred to. The 30th section of the Act of 1839, page 31, is in the following words : “ When any person shall be taken on mesne or final process, in any civil suit, and from inability to pay the demand, debt or damages, or find bail if *343 committed to jail, and such person has no lands, tenements, goods, chattels, or dioses in action, whereby his maintenance in jail can be defrayed, the plaintiff, or person at whose instance such person shall be imprisoned, shall pay and satisfy the same ; or if such person, or his attorney, shall refuse or neglect, after ten days previous notice, to pay or give security to pay the same, when demanded, the sheriff or jail- or in whose custody such prisoner is, may discharge him from confinement; provided, however, that such prisoner shall, before he be discharged, render on oath a schedule of his estate, and assign the same.”
At the time Evans was committed to jail, he had abundant means to satisfy the damages recovered by defendants ; and he preferred going to jail rather than subjecting his property to the operation of a fi.fa. He made his own choice, and surrendered his person rather than his property. His going to jail did' not arise from inability to satisfy the demands against him. At that time he left his property, to come and surrender himself in discharge of his bail ; and by his voluntary imprisonment, he has deprived his creditors of the means and security which, they would otherwise have .had a right to resort to, in satisfaction of their recovery. For, if he had not taken off his property when first arrested; or if, after he had given bail, he had remained out of the State, these judgments would have been satisfied, either by his property or his bail bond. In the first instance, then, even under the Act of 1839, the prisoner was not in a situation to subject the defendants to liability. But in the second place, had he, at the time these actions were commenced, no lands, goods, or choses in action, whereby his maintenance in jail could be defrayed ? There was no evidence .that he had divested himself of the property which he had when he was committed, much less that it had been destroyed or wasted, so that it afforded no available income subject to the control of the prisoner. All that was said was, that the property was out of the State, and could not be reached by the sheriff. That may be, and still the prisoner may have abundant means at his command; he may have had regularly transmitted to him the proceeds of his crops, and have his money at interest, or in bank ; and in such cases the sheriff *344 could no more reach it than if it was out of the State, without an order from Evans himself. The inability to pay cannot depend on the location of the property, or the peculiar form in which it may exist. The fact that a person’s funds may be abroad, does not deprive him of his right to control and command them at pleasure. They may be drawn on by bill, taken possession of by an agent, or converted into money by sale. The ability of a prisoner to pay for his subsistence, must frequently depend on his own volition to command the means in his power ; and when he wilfully refuses to pay, because he does not choose to command them, this should not constitute the inability contemplated by the Act. In fact, a refusal to assign ancl deliver, would, in general, be evidence that he had means, but which he was unwilling his creditors should have the benefit of. It would be singular, indeed, if a wealthy prisoner could compel his creditors to support him because his property happened to be in another State ; and such might be the case, where one contumaciously puts his creditors at defiance, by sending his property away after his arrest. What has become of the income of the prisoner’s property for the last five years 'l He either has it himself, or it is in the hands of agents, or the property has been destroyed. Suppose that after the ten days notice prescribed by the Act of 1839, the prisoner had been discharged, and thereupon he had filed his schedule, showing that he had large possessions in a neighboring State, or money in bank in this State, how would this be consistent with his inability to pay his jail fees % The prisoner’s ability must not be confounded with' the sheriff’s power to enforce His remedy, for the latter must depend more upon the description than the situation of assets.
We think that the sheriff in this case was bound to have shown that Evans was unable to pay, for the want of means, before he could hold the present defendants liable to the demands against them; and it may be, that at the time this action was commenced, Evans’s means were entirely wasted or destroyed by the act of God, or by the wilful acts of others, without any fault on his part. And if so, the sheriff ought not to b'e compelled to support him, but might be authorized to discharge him under the *345 Act, or to compel the parties to this suit to pay the prisoner’s board; for although the prisoner’s contumacy should give him no advantage, it should not subject the sheriff to prejudice. It would seem to be paradoxical that any one should be compelled to support another when he is abundantly able to support himself. As far as we can see, this is Evans’s situation; he is requiring others to feed him because he has wronged them, and does not choose to support himself. It may be, however, that he is entirely without means ; and I would not have the sheriff’s right to recover pay from the present defendants, to depend so much on Evans’s original ability to pay the demand for which he was committed, as upon the fact of his inability to pay the jail fees at the time this action was commenced. So long as the prisoner can pay, the party who committed him is exempt from liability; but when it can be shown that he is unable to do so from the want of means, then the sheriff may establish his right to recover in this action.
According to these views, we think a new trial should be granted.
Richardson and Earle, JJ., concurred.
O’Neall and Evans, JJ., dissented.